*Gaithersburg*
*A CHARACTER COUNTS! CITY*



July 26, 2007


William R. Varga, Esq.
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202-2021

**Re:   Response to ACLU Letter of July 9, 2007 on the City's Request for Opinion
Regarding its Anti-Solicitation Ordinance**

Dear Mr. Varga:

Thank for the opportunity to respond to the letter submitted by the ACLU of Maryland in
connection with the City's recent request for an opinion from the Attorney General's
office regarding the City's anti-solicitation ordinance. I will take this opportunity to
respond briefly, primarily to clarify mischaracterizations and misrepresentations made by
the ACLU in an attempt to support its arguments against the anti-solicitation ordinance.

## A.   *ACLU's Version of Background of the Ordinance*

In an effort to bolster its ultimate argument that the City's ordinance is unconstitutional,
the ACLU sets forth its version of the background behind passage of the City's
ordinance. However, that background is largely inaccurate and fraught with
misrepresentations. It is important to clarify these issues to the extent they call into
question the City's intent in passing the ordinance.

*City's Intent.*
Contrary to the ACLU's assertion, there is no evidence that the City's intent in drafting
this ordinance was only to target certain forms of employment solicitation by and of day
laborers. The City has had a prohibition against solicitation in roadways in the City Code
since 1997. Ordinance No. O-15-97, 6/2/97. This prohibition at all times addressed
employment, donations, subscriptions and alms, as it continues to do. Although the
increase in employment solicitation within the City revealed a need to tighten up the
existing ordinance and address the pedestrian and traffic safety problems raised by the
increase in activity, the ordinance continues to address other forms of solicitation activity
which contribute to those safety concerns as it has always done.

| MAYOR | COUNCIL MEMBERS | CITY MANAGER |
|---|---|---|
| Sidney A. Katz | Stanley J. Alster | David B. Humpton |
| | Geraldine E. Edens | |
| | Henry F. Marraffa, Jr. | |
| | John B. Schlichting | |
| | Michael A. Sesma | |

*Permission.*
The ACLU also states that day laborers have had permission to stand in public ways and private parking lots. This is not necessarily true in all cases, and the ACLU has failed to provide examples of this permission. In fact, the City of Gaithersburg Police Department has been authorized by owners of property throughout the City to act as agents to prohibit unauthorized persons from remaining on their properties pursuant to Criminal Law Article 6-403. The list of properties includes locations frequented by persons seeking to solicit employment opportunities. A list of these properties can be provided if needed.

*Day Laborer Task Force.*
On page 3 of its letter, the ACLU takes issue with the City's Day Laborer Task Force, criticizing the task force for not addressing solicitation by groups other than day laborers. The Day Laborer Task Force was established as a response to public concern that Montgomery County was attempting to locate a center within the City without going through a full public process. Contrary to the ACLU's assertions, it was not a response to complaints "mistaking day laborers for 'homeless drunks that frequent the area.'" The Task Force was extremely dedicated. This volunteer group devoted countless hours to weekly meetings, research and preparation of the comprehensive Task Force Report. That Report looked at the day laborer issue from many different standpoints, including reviewing how municipalities around the country were addressing the challenges raised in communities by the increase in this form of employment solicitation. One of those avenues was the anti-solicitation ordinance model. The Task Force recommended that the City pass such an ordinance in connection with the opening of an employment center.

*City's Alleged "Refusal" To Locate A Center In The City.*
Perhaps the ACLU's most blatant misrepresentation is its statement on page 3 of its letter that the City "adopted the Task Force's findings, but refused to permit a day laborer center within city limits." At no time did the City of Gaithersburg "refuse to permit a day laborer center within city limits." In fact, this allegation patently ignores the more than one year long search by City staff to locate a center that would meet the spirit of the Task Force's criteria, and meet the needs of Montgomery County who would be leasing the site, periodic progress reports by the City Manager, and public hearings on two potential sites - all in the face of efforts by citizens opposed to a center to scare potential landlords and neighboring tenants so that the potential sites would fail. After a full year's search, it became clear that a site could not be located within the City that met all of the County's needs and the recommendations of the Task Force.[1] This effort by the City can hardly be equated with a refusal to permit a center within city limits. The ACLU's attempt to

---

[1] In fact, on page 59 of its report the Task Force recommended that any center be considered a special exception use and located only in a commercial retail zone or industrial zone. The County's siting of the Crabbs Branch Center meets that criteria directly.

bolster its challenge to the anti-solicitation ordinance by suggesting that the City refused to locate a center within its borders should thus not be countenanced.[2]

*Narrowly Tailored.*
A key element in the test of constitutionality is whether the ordinance is narrowly tailored to serve a significant government interest. As noted in the memorandum dated May 3, 2007, the ordinance very clearly enumerates the significant government interest served, specifically traffic and pedestrian safety. *See*, Sec. 15-9(a). The Purpose section of the ordinance goes on to indicate how the interests in traffic and pedestrian safety will be served by the ordinance. *See*, Sec. 15-9(b). The ACLU suggests that the City does not have such a significant interest because the City "did not undertake any analysis of traffic or pedestrian hazards posed by day laborer solicitation." Initially it should be noted that the City did not consider only the hazards posed by day laborer solicitation, but rather such hazards posed by solicitation activity for employment (which could be other than day laborers), donations, subscriptions and alms. Hence, the ordinance is a content neutral restriction, aimed at solicitation activity, not at the specific message involved.

Moreover, the Supreme Court addressed this same government interest, and whether such analysis are required to support it, in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981). *Metromedia* dealt with restrictions against billboards. In affirming the California Supreme Court upholding the restrictions, the United States Supreme Court stated that whether the distracting effect of billboards caused traffic accidents was a continuing controversy, holding that "a legislative judgment that billboards are traffic hazards is not manifestly unreasonable and should not be set aside." *Id.*

In so holding, the Supreme Court would not disagree with what it considered to be common-sense judgments of local lawmakers, finding nothing to suggest such judgments as unreasonable. The Court also reiterated a prior holding to the effect that it would be trespassing on what it considered to be one of the most intensely local and specialized of all municipal problems if it held that such a regulation had no relation to traffic safety, that it was the judgment of local authorities that it had such a relation, and that there was nothing that showed it to be palpably false. *Metromedia*, 453 U.S. at 509, citing *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 109. Simply stated, the Supreme Court did not require studies and reports to find that a local municipality's stated interest in traffic safety was a very real, concrete, indeed significant, government interest. The

---

[2] Moreover, the City's efforts since the opening of the Crabbs Branch center belie the ACLU's allegations. The City has fully cooperated with Montgomery County to make the Crabbs Branch center a success, including community outreach to educate workers about the Center, and directional signage at informal gathering locations informing workers of the Center location.

3

ACLU has not presented an analysis negating the need for increased pedestrian and traffic safety; thus, there is nothing showing this interest to be "palpably false."

**B.     *The Ordinance is a Permissible, Content Neutral Restriction Under the First Amendment***

The City's May 3 memorandum provides a comprehensive analysis of the ordinance under the relevant First Amendment inquiry. The City stands by that analysis and will not repeat it in this response. However, the City takes issue with certain elements of the ACLU's arguments which, again, involve misrepresentations to suggest that the ordinance is unconstitutional.

*Whether The Ordinance Is Narrowly Tailored.*
Again, contrary to the ACLU's assertions, the ordinance is not aimed at "forcing latino day laborers to seek employment outside the City limits." *See*, ACLU letter, p. 9. The ordinance clearly sets forth its findings, purpose and intent to alleviate pedestrian and traffic safety concerns posed by various forms of solicitation activity. In addition, that this is a significant government interest is without question under *Metromedia.*

It is also important to remember a portion of the test for determining whether a restriction is narrowly tailored, which the ACLU omits from its analysis. As stated in *Ward v. Rock Against Racisim*, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), the test is not whether the restriction is the least restrictive or least intrusive method of serving the government interest, but whether the ordinance "promotes a substantial government interest that would be achieved less effectively absent the regulation. *Ward*, 491 U.S. at 799. The City's memo details how the ordinance meets the test set forth in *Ward.*

*Alternative Channels.*
The ACLU's focus of whether alternative channels of communication are provided is concentrated on the day laborers specifically. Contrary to the ACLU's misrepresentations, Montgomery County did in fact provide shuttle buses from 17 North Frederick Avenue in the City – a location where workers were informally gathering to obtain work prior to the opening of the center - to the Crabbs Branch center for the first two weeks. In addition, the County was willing to pick up at other sites if requested as part of the initial outreach program. Today, a County Ride-On bus stop is located just two blocks from the Center; Ride-On stops to get to the stop near the Center are located throughout the City. Thus, workers seeking employment have ready access to the employment center.

In addition, the numbers of workers and potential employers coming to the Center belies the ACLU's suggestion that this is not a viable alternative. The Report On the Operation of The Crabbs Branch Temporary Workers Center (CBTWC) dated June 22, 2007, issued by Montgomery County, indicates that for April 2007, the number of day job placements was 130; permanent job placements was 2; temporary job placements that were more

than one day were 2; new employers registered with the center were 62 and the number of existing employers was 6. In May those numbers increased to 596 daily job placements; 2 permanent jobs; 37 temporary (more than one day) placements; 208 new employers registered; 86 existing employers; 16 informational referrals; and 55 workers attending new presentations given at the center. It is disingenuous to argue that this is not a viable alterative channel of communication when this avenue is responsible for 598 daily job placements, some permanent jobs, and over 200 employers registering with and seeking employees at the site.

The fact that workers are obtaining permanent job placements (see above) contradicts the ACLU's suggestion that the site is only for day laborers, and not for others seeking employment opportunities. Additionally, according to Montgomery County, the official name is the "Crabbs Branch Workers Center." Although on the operator's website it is listed as the "Greater Gaithersburg Center at Crabbs Branch," neither name indicates that the Center is only available to persons seeking day work. In addition, the operator states on its website that the Center "would love to provide workers for you or/and your business, whether you need someone on short notice or just one day, or if you're looking to fill a permanent or temporary position."[3] The fact that the County's progress report includes numbers on permanent placements underscores that the center is not only targeted to day laborers and is a viable alternative channel of communication for anyone seeking employment opportunities.

## C.     *Conclusion*

As set forth in the City's May 3 memorandum, the City's anti-solicitation ordinance is a content neutral restriction, aimed at solicitation activity rather than at any particular message. The ordinance is intended to serve the significant government interest of traffic and pedestrian safety. It is narrowly tailored to meet that interest and, that interest would be achieved less effectively without the restriction. Alternative channels of communication are available for the various forms of solicitation activity involved. Finally, a severability clause has been provided which negates the need to invalidate the entire ordinance if any portion of the ordinance is deemed invalid. The ordinance is a

---

[3] *See*, www.casademaryland.org/Employment_md.htm.

reasonable time, place and manner restriction, in accordance with the provisions of the First Amendment.


Thank you again for the opportunity to respond.   Should you have any questions or require additional materials, please do not hesitate to contact me directly.

Sincerely,

Cathy G. Borten
City Attorney

cc:     Mayor and Council
        David B. Humpton, City Manager